IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CALVIN CARTER,                        )
                                      )
            Plaintiff,                )
                                      )
      v.                              )     1:08CV370
                                      )
NAPHCARE, INC.[1] and FORSYTH         )
COUNTY SHERIFF'S DEPARTMENT,          )
                                      )
            Defendants.               )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a prisoner of the State of North Carolina, seeks relief pursuant to 42 U.S.C. § 1983.[2] Specifically, he claims that Defendants' alleged failure to adequately treat a knee injury he sustained while in custody constituted deliberate indifference to his serious medical needs.

The underlying facts are as follows. On August 31, 2005, Plaintiff injured his left knee while playing basketball at the Forsyth County Detention Center ("FCDC"). (Compl. ¶ 1.) Shortly afterward, Plaintiff was treated with ice and ibuprofen by members of the medical staff at FCDC. These individuals were employed by Defendant Naphcare, Inc. ("Naphcare"), a contract health care provider for the detention center. (Compl. ¶ 2.) Two days later,

---

[1] Although Plaintiff names Naphcare, Inc. as a Defendant to this action, it does not appear that any attempt was made to serve that entity with the Complaint, either before or after removal.

[2] The Complaint alleges violations of Plaintiff's rights under the Eighth and Fourteenth Amendments of the United States Constitution. Because alleged violations of the right to be free of cruel and unusual punishment guaranteed by the Eighth Amendment are redressable under 42 U.S.C. § 1983, Plaintiff's case has been construed as an action under this statute.

on September 2, 2005, the medical staff again addressed Plaintiff's knee pain and took the following course of action:

> (1) restricted Carter from recreation for seven days; (2) wrapped Carter's left knee with an ace bandage; (3) prescribed Carter 600 milligrams of ibuprofen to be taken orally twice a day for five days to help alleviate knee pain; (4) suggested Carter elevate his knee when sitting; and (5) instructed officers to provide Carter with ice twice a day for two days.

(Docket No. 8 at 3.)

By late September 2005, both Plaintiff's complaints of knee pain and the frequency of his medical visits increased substantially. On September 26th and 28th, the medical staff adjusted the dosage and type of his pain medication, respectively. Then, on October 7, 2005, Plaintiff was involved in a fight with another inmate, during which he claims to have further injured his knee. (Compl. ¶¶ 3-4.) When the facility's physician, Dr. Exeigbo, examined Plaintiff on October 10, 2005, he drained 66 milliliters of blood from the knee and injected the knee with methylprednisone. At that point, Dr. Exeigbo surmised that the blood buildup in Plaintiff's knee was due to an anterior cruciate ligament ("ACL") tear.

Plaintiff saw FCDC medical personnel three additional times in October 2005 for follow-up appointments and adjustments of his pain medication. Three further adjustments were made in January 2006. At the last of these appointments, on January 18, 2006, the medical staff also x-rayed Plaintiff's knee. Efforts to control Plaintiff's pain continued in February, culminating in a second

-2-

methylprednisone injection. Finally, in late March 2006, Plaintiff was referred to an orthopedist for evaluation of his knee.

On April 21, 2006, Plaintiff had his first appointment with Dr. Decook at CompRehab. Dr. Decook's examination of Plaintiff's knee suggested both a torn ACL and a torn meniscus. Dr. Decook also noted that Plaintiff had a full range of mobility in his knee and that a torn ACL could not be the cause his limp. Dr. Decook recommended an MRI of the knee, but did not recommend ACL surgery as a necessity at that time. The MRI confirmed Dr. Decook's diagnosis, but at a follow-up appointment at CompRehab on May 12, 2006, the medical provider, nevertheless, recommended that Plaintiff's ACL be repaired.

Although surgery was to be scheduled shortly thereafter, Plaintiff's conviction on May 10, 2006 and subsequent transfer to the North Carolina Department of Correction ("DOC") prevented surgery at that time. (Compl. ¶¶ 19-20.) However, once in DOC custody, Plaintiff was evaluated by another orthopedic surgeon and underwent partial surgery to repair his meniscus. (Compl. ¶ 21.) He now claims that the surgery left him with limited mobility. (Compl. ¶ 22.) He further claims that, while the surgery itself is not attributable to Defendants, the delay in providing it resulted in injuries which "violated his rights and constituted cruel and unusual punishment under the Eight[h] Amendment of the United States Constitution." (Compl. ¶ 23.) Defendant Forsyth County Sheriff's Department ("FCSD") now argues that Plaintiff fails to

show any constitutional violation and that his Complaint should be dismissed.

## Legal Standard

Defendant has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. The Fourth Circuit recently clarified the standard for such review in Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008), where it stated:

> [W]e "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts," and "we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir.2000); see also Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003). Additionally, the complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, ____ U.S. ____, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (emphasis added).

Where, as here, the plaintiff is *pro se*, it is also appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff. Gordon v. Leeke, 574 F.2d 1147, 1149-51 (4th Cir. 1977). In the present case, these materials include Plaintiff's filed grievances and medical records, which he includes as attachments to the Complaint, as well as his response brief to Defendant FCSD's motion.

## Discussion

In order for Plaintiff to succeed on his claim alleging a lack of medical care, he must show that Defendant was deliberately indifferent to a serious medical need. Mere negligence or

-4-

malpractice is not enough.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  To meet this standard, Plaintiff must make a prima facie showing that his medical treatment was grossly incompetent or inadequate to the extent that it shocks the conscience and seems fundamentally unfair.  See Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  Deliberate indifference is manifested by actual intent or reckless disregard of substantial risks of danger.  Id.  Such indifference is akin to criminal law recklessness--not mere disregard of a great risk, but a conscious disregard constituting a gross deviation from the standard of care.  Id. at 105; Devitt, Blackmar, Wolff and O'Malley, Federal Jury Practice and Instructions § 17.01 (2008).

In evaluating a medical care case, the Court may rely on medical records to determine whether the injury is, in fact, serious.  West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978).  Intake examinations, complaints made, treatment given and its timeliness, physicians' evaluations, and subsequent evaluations also constitute relevant evidence in disputes involving medical care.[3]  Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1993).  When the relevant evidence shows that Plaintiff was under constant medical supervision, he likely is not entitled to relief since medical judgments are not normally subject to review.  Russell v. Sheffer, 528 F.2d 318, 318 (4th Cir. 1975).

---

[3]While Courts may not normally look beyond the face of the complaint in deciding a motion to dismiss, Plaintiff himself has submitted these additional materials for the Court's review by attaching them as exhibits to his Complaint.

-5-

Here, Plaintiff does not dispute that he received medical evaluations and treatment on a regular basis. Rather, he argues that Defendants, by delaying the surgery required to repair his knee injury, ultimately denied him the treatment he needed most. Thus, to determine the outcome of Defendant's motion, the Court must examine both the seriousness of Plaintiff's injury and whether Defendant's efforts to treat it were, in fact, reasonable.

To demonstrate seriousness, Plaintiff must show that his medical need is one which "has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Wynn v. Mundo, 367 F. Supp. 2d 832, 838 (M.D.N.C. 2005). In the present case, Plaintiff's injury arguably meets this definition. As set out above, he was treated by both Naphcare and independent physicians on multiple occasions, and at least one doctor recommended surgery to repair Plaintiff's knee.

However, even assuming that Plaintiff's injury qualifies as serious, he must still make a prima facie showing that Defendants knew of, yet consciously disregarded, an excessive risk to his health and safety in the course of their treatment. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). On this element, Plaintiff falls short. He has not shown that his treatment was grossly incompetent or inadequate to the extent that it shocks the conscience and seems fundamentally unfair. Miltier, 896 F.2d at 851. Rather, he simply claims that Defendants failed to ensure that his knee surgery took place before his transfer to the DOC,

and that the delay caused him further suffering and complications. To support his argument that this conduct constitutes deliberate indifference, Plaintiff focuses almost exclusively on Defendants' alleged delay in referring him to an outside orthopedist. (Compl. ¶ 28.)[4] This allegation, taken as true, ultimately does nothing to advance Plaintiff's claim. All parties agree that Plaintiff was convicted and transferred to DOC custody sometime in mid-May of 2006, and that, shortly after the transfer, he had knee surgery to repair his torn meniscus. While Plaintiff claims that the surgery left him with limited mobility, he fails to offer any evidence that earlier surgery might have yielded a different result. The only possible evidence Plaintiff offers to this effect is the alleged statement of Dr. Exiegbo that "'[a]rthritis would set in if [Plaintiff's suspected ACL tear] was not corrected ASAP.'"[5] (Compl. ¶ 10.) Plaintiff also claims that, post-surgery, he was left with limited mobility. (Compl. ¶ 22.) Unfortunately for Plaintiff, several problems exist with these bases of support. First, the Complaint itself reveals that medical professionals other than Defendants ultimately determined that Plaintiff's ACL did not, in fact, require surgical repair. Second, the medical records also show that Plaintiff suffered no loss of mobility as a direct result

---

[4] The Complaint also cites Defendants' alleged failure to transport Plaintiff to his scheduled surgery appointment on May 12, 2006. (Compl. ¶ 29.) However, Plaintiff's own brief indicates that (1) the May 12th appointment was a follow-up consultation with his orthopedist, not surgery, and (2) that he did, in fact, receive this consultation. (See Docket No. 8 at 4.)

[5] There is no documentation of this statement or any permutation of it anywhere in the medical records.

-7-

of his ACL tear.  Third and finally, Plaintiff has not alleged that he currently suffers from arthritis.  Thus, while he connects his surgery to his current complaints, Plaintiff has not shown that any of Defendants' actions, including a delay in surgery, are in any way connected to his current medical problems.

In short, Plaintiff has shown nothing beyond a mere disagreement between himself and his healthcare providers over the proper course of his treatment, and such disagreements do not state viable Eighth Amendment claims.  See Russell, 528 F.2d at 319.  Without evidence of any constitutional violation, Defendants cannot be held liable under Section 1983.  Belcher v. Oliver, 898 F.2d 32, 26 (4th Cir. 1990).  Accordingly, Plaintiff's claims, including the related retaliation claims he discusses at length in his brief, merit dismissal.

**IT IS THEREFORE RECOMMENDED** that Defendant FCSD's motion to dismiss (docket no. 5) be granted.

**IT IS FURTHER RECOMMENDED** that this action be dismissed as to Defendant Naphcare due to Plaintiff's failure to prosecute and, in light of the dismissal of all named Defendants, that Judgment be entered dismissing this action in its entirety.

        /s/ Donald P. Dietrich
        **Donald P. Dietrich**
        **United States Magistrate Judge**

July 20, 2009

-8-

Case 1:08-cv-00370-JAB-DPD   Document 11   Filed 07/20/09   Page 8 of 8